NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAMIRO A.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.W.,
*Appellees.*

No. 1 CA-JV 18-0342
FILED 3-7-2019

Appeal from the Superior Court in Maricopa County
No.  JD32331
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1          Ramiro A. ("Father") appeals the superior court's order severing his parental rights to his son, who was born in 2015.[1]  Because sufficient evidence supports the order, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Father is a Mexican national living in Agua Prieta, Mexico, a town opposite Douglas on the Arizona-Mexico border.  At one time, Father lived in Arizona, but he was deported and now cannot legally enter the United States.

¶3          The child was born in Tucson and is not a Mexican citizen.  He was born with a heart condition, is developmentally delayed, has a sensory disorder that limits his ability to travel for longer than 45 minutes at a time and has difficulty eating because of a congenital disorder of his esophagus.  He sees nine medical specialists and has some 12-15 medical appointments a month.

¶4          The Department of Child Safety ("DCS") took custody of the child in March 2016 after medical personnel reported his mother had failed to return him for follow-up care.  Once in the care of the State, the infant was immediately hospitalized for congestion and related symptoms.  DCS then filed a dependency petition alleging Father and the mother had neglected the child.  The court eventually found the child was dependent as to his mother and set the case plan for reunification.  Meanwhile, DCS could not locate Father and finally served him by publication in December 2016.  Father first appeared at a hearing in the dependency in April 2017.  During that hearing, DCS stated that Sistema para el Desarrollo Integral de la Familia ("DIF"), a Mexican government agency equivalent to DCS, could provide Father some reunification services in Mexico.

---

[1]      The court's order also severed the rights of the child's mother, but her rights are not at issue in this appeal.

**¶5**          In May 2017, Father began participating in services provided by DIF.  According to documentation offered at trial, he participated in parenting classes that included training on "care and stimulation for children with developmental delays."   Father also completed both a psychological evaluation and a home study.  The psychological evaluation found Father competent to have custody of his child, and the home study concluded Father's residence in Mexico was suitable for reunification.  DCS, however, faulted both reports for not evaluating Father's understanding of nor his ability to care for the child's medical needs.

**¶6**          Meanwhile, the superior court changed the case plan to severance and adoption in July 2017.  DCS then moved to sever Father's parental rights based on 15 months' out-of-home placement under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c) (2019).[2]

**¶7**          On July 2, 2018, DCS reported that DIF had provided a supplemental report that addressed DCS's concern about the previous reports.  The new report concluded again that Father was competent to have custody of his son, but stated that 24-hour nursing care would be "necessary" for the child.  The report also stated Father lives five hours from the nearest city with medical specialists that the child needs and that Father's insurance does not cover the child because the child is not a Mexican citizen.

**¶8**          The superior court held the severance hearing over three days in June and July 2018.  Father, the child's mother, a DCS case manager, a doctor and an occupational therapist all testified.   After hearing the evidence, the court severed the rights of both parents.  As an initial matter, the court found the child has "special medical needs."  The court then found DCS made diligent efforts to provide reunification services through DIF, but also concluded the services Father received were insufficient, given the child's medical needs.   The court also found it was substantially likely Father could not properly parent the child in the near future because Father lives too far from the necessary specialists and his insurance does not cover the child.

**¶9**          Father timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) (2019), 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

---

[2]          Absent material revision after the relevant date, we cite the current version of a statute or rule.

**DISCUSSION**

¶10        The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). When DCS seeks termination of a parent-child relationship, it must prove, by clear and convincing evidence, the existence of a statutory ground under A.R.S. § 8-533(B), *Michael J.*, 196 Ariz. at 249, ¶ 12, and, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Father does not contest the superior court's best-interests findings.

¶11        Under § 8-533(B)(8)(c), DCS must show that (1) the child has been in an out-of-home placement under its supervision for at least 15 months; (2) DCS has made "a diligent effort to provide appropriate reunification services"; (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement"; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

¶12        The superior court is the trier of fact in a termination proceeding. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We view the evidence and reasonable inferences drawn from the evidence in the light most favorable to sustaining the court's decision. *Id.* We will not reweigh the evidence and will not reverse unless no reasonable evidence supports the court's factual findings. *Id.*

¶13        Father argues the superior court erred in finding that DCS made a diligent effort to provide appropriate reunification services. To satisfy DCS's obligation to provide reunification services under § 8-533(B)(8), DCS must prove it "made a reasonable effort to preserve the family." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999). This requires DCS to "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at 192, ¶¶ 34, 37. DCS need not provide "every conceivable service." *Id.* at 192, ¶ 37 (quoting *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

¶14        Father argues DCS failed to meet its obligation in three ways. First, Father points to the superior court's finding that the services Father received were "unrelated to caring for a child with significant medical needs," and argues that finding shows DCS failed to undertake appropriate reunification measures. We disagree. Because Father lives in Mexico, DCS

could not directly provide him with services, but could only ask DIF to provide services to him. Through DIF, Father received a home study, a psychological evaluation and parenting classes. Given that DCS could not control the specific services provided to Father, the superior court did not err by finding DCS did what it could under the circumstances.

¶15        Second, Father argues that DCS should have helped him secure Mexican citizenship for his child so that the child could qualify under Father's insurance policy. But Father presumably was better situated than DCS to know the terms of his own insurance policy. According to the record, DCS became aware of the citizenship issue only after the severance trial began.

¶16        Third, Father argues DCS never enabled him to be present telephonically for his child's medical appointments so that he could learn about his child's conditions. But the DCS case manager testified that the child's medical providers had declined to allow Father to be present by telephone because the need for a translator would unduly lengthen the appointments.

¶17        Father also argues the superior court erred by finding that it was unlikely he would be able to provide proper parental care for the child in the near future. Sufficient evidence supports the court's finding. Most notably, Father lives a five-hour drive from the nearest medical facility that could provide for the child's medical needs, and, as noted, the child could travel by car only for 45 minutes at a time. Moreover, the court heard evidence that DIF recommended 24-hour nursing care for the child, and at the time of severance, Father's insurance would not cover his child's medical needs.

## CONCLUSION

¶18        For the foregoing reasons, we affirm the superior court's order severing Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA